## Case No. 9,872.

### MOSES v. DELAWARE INS. CO.

[1 Wash. C. C. 385.] [1]

Circuit Court, D. Pennsylvania. April Term, 1806.

MARINE INSURANCE — FACTS CONCEALED BY ASSURED — PARTICULAR KNOWLEDGE — GENERAL KNOWLEDGE.

Insurance on goods on board the Liberty, from Philadelphia to Charleston, lost or not lost. It was the duty of the assured, to communicate to the underwriters, a letter received by him, containing particulars of a hurricane which had occurred at Charleston after the vessel sailed: although the fact of there having been severe

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

gales on the coast of Carolina, was known to the defendants. The knowledge of the plaintiff was particular, that of the defendants was general.

[Cited in Ruggles v. General Interest Ins. Co., Case No. 12,119; Sun Mut Ins. Co. v. Ocean Ins. Co., 107 U. S. 511, 1 Sup. Ct. 600.]

Action on a policy on goods, on board the Liberty, lost or not lost, at and from Philadelphia, to Charleston in South Carolina. The Liberty sailed from Philadelphia, on the 28th or 29th of August, 1804, and the policy was signed on the 22d of September, 1804. The vessel was found at sea, some time in September, turned bottom upwards. Great part of the cargo was thrown upon an island on the Carolina coast, and was sold, under a sentence of the district court, and salvage paid thereout. The defence was, that the plaintiff [Myers Moses] had concealed from the underwriters, a material fact, within his knowledge.

The evidence was, that on the afternoon of the 21st September, the plaintiff met with Mr. Steel in the street, who asked him if he had not shipped goods on board the Liberty, and whether he was insured. Being answered in the negative, Steel informed him, that he had that day received a letter from Charleston, dated the 9th, giving an account of a dreadful storm, which had happened there the day before, and that he communicated the contents of the letter to the plaintiff, every word, so far as he recollected. The words of the letter are, "Yesterday, the most dreadful storm happened here, that has ever been experienced; the damage amongst the shipping very great." Mr. Steel, who also was directed to insure the Liberty, applied at the different offices on the 21st, and was informed, that there had been severe gales on the coast, and much damage heard of. Most of the presidents disliked the risk. The Pennsylvania office spoke of asking seven per cent.; at the others, five was asked, which was double the usual premium. The president of the Delaware office informed him, that he had heard of the loss of the Patient Sally, which sailed on the 4th from Savannah, and which he should have to pay. The Sincerity sailed from Charleston on the 4th, and had arrived here, after experiencing great damage from the gale. The usual passage from here to Charleston, was proved to be ten to twelve days, but a vessel was not much out of time at eighteen days. It did not appear that the hurricane at Charleston, was known at any of the offices, until between ten and eleven o'clock of the 22d, after the arrival of the mail. The president of one of the offices declared in evidence, that after this account was received, no insurance could have been effected at his office, under fifty per cent., if at all. It was proved by the same person, and by one of the directors of the Philadelphia insurance office, that the accounts which came by this mail, did not state the storm in as strong language, as the letter before alluded to. After the arrival of the mail, the

Liberty was insured at the Philadelphia office, at five per cent., though the account of the storm, as stated by this conveyance, was known: but the office calculated, that the Liberty had not been out long enough to reach that part of the coast, where the severity of it was felt. Upon reference to the papers, from the 15th to the 21st of September, it appeared, that very heavy gales had happened on the coast, and vessels and wrecks found in the latitude of Charleston. The plaintiff, on receiving the communication from Mr. Steel, on the afternoon of the 21st, expressed himself satisfied as to the Liberty, as she might not be affected by the storm at Charleston. On the evening, however, of that day, he called at the Delaware office, to insure this cargo, but the president was not within. Early on the morning of the 22d, he called again, and effected the policy; but, the instrument not being filled up, he called two or three times for it, and finally received it between eight and nine o'clock in the morning. On the same morning, he informed an acquaintance of his of the dreadful storm which had happened at Charleston, and expressed his satisfaction at having got his insurance effected.

The defendant insisted, that the policy was annulled, in consequence of the concealment of this letter. Park, Ins. 209; 2 N. Y. Term R. [2 Caines] 57, in point.

The plaintiff contended, that the existence of the storm was known to the defendant; and, therefore, need not be communicated. 1 Marsh. Ins. 354; 4 Burrows, 1905; Park, Ins. 185.

Mr. Philips and Moses Levy, for plaintiff.
Rawle & Condy, for defendant.

WASHINGTON, Circuit Justice, charged the jury. It is admitted, that the plaintiff did not communicate to the office, the information he had received of the storm at Charleston, or that there was a letter in town respecting it; but, it is contended, by the plaintiff, that this was unnecessary, since it was sufficiently known to the defendants, to render the communication unnecessary. The rule is, that the insured must disclose every fact, material to the risk, within his own knowledge, which the insurer does not know, or is not bound to know. They were not bound to know of the particular storm mentioned in this letter; and, there is no evidence which brings home to them, in any respect, a knowledge of it. The only question, then, is; whether the communication of the contents of that letter, was material to the risk, taken in connexion with the knowledge, which the defendants had obtained through other channels.

The defendants knew generally, that there had been heavy gales on the coast, in the latitude of South Carolina; that damage had been the consequence; that a vessel, which had left Savannah on the fourth, was lost; that another had experienced its violence, was damaged, but had arrived. But, the plaintiff knew of a particular storm, more violent than had ever been experienced, which had done great injury to the shipping at Charleston, the port to which the Liberty was destined. She had been out ten or eleven days previous to the storm, and the usual voyage is from ten to twelve days, but not much out of time if extended to eighteen. She might, or might not, be within the fury of this particular storm. Was there any material difference, between the general information, which the defendants possessed, and that which the plaintiff possessed, as it respected the fate of the Liberty? If there was, the latter should have been communicated. Would you, after seeing this letter, and being yet ignorant of the fate of the vessel, have deemed the risk increased, from what it would have been estimated, with the general information possessed by the defendants? What was the plaintiff's opinion on the subject? At the time he received the account from Steel, he was his own insurer. Though he seemed to think lightly of the information given in the letter, he yet applied to insure the same evening; repeated it the next morning; and, after evident marks of impatience, got it concluded before the arrival of the post. If you think, that this conduct was induced by the contents of that letter, then it is plain, that he at least thought the information very material; and, on this point, furnishes strong evidence against himself. What was the conduct of the insurance offices? Under the impression of the general information of gales on the coast, double premiums were though sufficient. After the news of the Charleston storm had reached one of the offices, they still insured at five per cent.; but they did not know, that it was as severe as the letter to Steel had stated it, and they calculated, that the Liberty had not reached the place where it happened. After it was known, it appears, that, at another office, the risk would not have been taken at fifty per cent., if at all. Now, if the information of this particular storm was material, the defendants ought to have known it, so as to have had an opportunity of deciding, whether to take the risk, and at what premium.

The plaintiff suffered a nonsuit.